**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
BANKRUPTCY DIVISION
DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| In re: | ) | Involuntary Chapter 7 |
| | ) | |
| Elizabeth Service, | ) | Case No. 3:20-bk-30003 (MFW) |
| | ) | |
| Putative Debtor. | ) | Rel. Docs. 18, 20, 24, 25 & 26 |

**MEMORANDUM OPINION[1]**

Before the Court is the Motion for Attorneys' Fees and Costs Pursuant to 11 U.S.C. §303(i)(1) filed by Elizabeth Service (the "Movant") and the Opposition thereto filed by Ackley Caribbean Enterprises, Inc. ("ACE") and FTM, LLC (the "Petitioning Creditors"). For the reasons stated below, the Court finds that the Movant is entitled pursuant to 11 U.S.C. § 303(i)(1) to a partial award of attorneys' fees and costs incurred in prosecuting her motion to dismiss the involuntary petition.

I.  BACKGROUND

In October 2016, the Movant entered into an Asset Purchase Agreement (the "APA") with ACE to purchase two restaurants in St. Thomas, U.S.V.I.  The Movant paid $10,000.00 as a non-refundable deposit and financed the balance, $290,000.00 ("Loan"), through financing from ACE.  The obligation was secured by the restaurants' assets and by real estate owned by the Movant in

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014.

Georgia. The Movant also agreed to pay the monthly rent on the premises owed by ACE to FTM, which she paid directly to FTM.

With the onset of the pandemic in spring of 2020, the Movant was unable to make the payments due on the rent or the APA. She spoke with FTM who agreed to accept half the rent due, deferring the rest. The Movant tried to negotiate an accommodation from ACE but they could not agree on terms.

On September 21, 2020, the Petitioning Creditors filed an involuntary petition against the Movant. The Movant filed a motion to dismiss the involuntary petition asserting that (1) only two creditors signed the involuntary petition while she has more than 12 creditors, (2) there is a bona fide dispute about those two creditors' claims, and (3) the petition was filed in bad faith. The Petitioning Creditors filed a response and a hearing was held on November 10, 2020. At the conclusion of the hearing, the Court granted the motion to dismiss, finding that FTM was not a creditor (having no contract with the Movant) and that ACE was not an eligible creditor because its claim was disputed (in amount and status as unsecured). The Court made no ruling on the bad faith allegation and its order was without prejudice to a refiling or to a motion for attorneys' fees under section 303(i)(1).

On March 3, 2021, the Movant filed a motion seeking almost $40,000 in fees and expenses. The Petitioning Creditors filed a

response and a hearing was held on the Motion on March 18, 2021, after which the Court held the matter under advisement.

II.  JURISDICTION

At the hearing, the Petitioning Creditors argued initially that the Court does not have jurisdiction to hear the motion because the case is closed and no motion was filed seeking leave to reopen the case.  See, e.g., In re Cap. Fin., Inc., No. RS 02-19544-MG, 2007 WL 7535047, at *2 (B.A.P. 9th Cir. Nov. 14, 2017).

The Court finds that the Capital Finance case unpersuasive because the court merely noted that the bankruptcy court had required that the case be reopened without deciding whether it was necessary.  Id.  The Court concludes, instead, that it has jurisdiction because the issue of attorneys' fees under section 303(i)(1) does not even arise until the case is dismissed.  See, e.g., In re Cooper School of Art, Inc., 709 F.2d 1104, 1106 (6th Cir. 1983) (holding that "[w]hen a bankruptcy court dismisses a petition for involuntary proceedings . . . it does not lose jurisdiction for the purpose of awarding costs and attorney fees"); In re Ross, 135 B.R. 230, 234 (Bankr. E.D. Pa. 1991) ("Given the language of the statute, a bankruptcy court must first order the dismissal of an involuntary petition prior to reaching any issues under section 303(i). . . . [and therefore] I

have the jurisdiction to consider an award under section 303(i) after dismissal.").

Further, at the hearing on the motion to dismiss, the Court held that its ruling was without prejudice to the Movant's right to request fees.  Therefore, the Court concludes that it has jurisdiction to consider the Motion for Attorneys' Fees.

III. <u>DISCUSSION</u>

The Petitioning Creditors raise several other reasons why the Motion should be denied.

A.   <u>Timeliness of Motion</u>

The Petitioning Creditors initially argue that the motion is untimely because it was filed more than 3 months after dismissal of the involuntary case.  They contend that any such motion must be filed within 14 days pursuant to Rule 54(d)(2)(B).  <u>See</u> Fed. R. Bankr. P. 9014(c) (incorporating Rule 7054 which includes Rule 54(d)(2)(B)).

The Court rejects this argument.  Rule 54 is not applicable to the award of attorneys' fees and costs under section 303(i)(1).  <u>See, e.g.</u>, <u>Cap. Fin.</u>,, 2007 WL 7535047, at *5-6 (concluding that "Fed. R. Civ. P. 54(d) . . . do[es] not apply. . . . [because] § 303(i) is substantive law providing an independent claim to an alleged debtor whenever an involuntary petition is dismissed without the alleged debtor having waived

4

that claim" rather than a general claim as a prevailing party under Rule 54); Nat'l Med. Imaging, LLC v. U.S. Bank (In re Nat'l Med. Imaging, LLC), 570 B.R. 147, 157 (Bankr. E.D. Pa. 2017) (holding that "section 303(i) claims are not subject to a statute of limitations (whether contained in the Bankruptcy Code or borrowed from state law), but must [only] be brought within a reasonable amount of time that does not prejudice Defendants"). The Court concludes that the Petitioning Creditors did not contend, or prove, that they were prejudiced by any delay in the filing of the Motion.

    B.    Standard of Review

Section 303(i)(1) provides:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>     (1) against the petitioners and in favor of the debtor for -
>         (A) costs; or
>         (B) a reasonable attorney's fee.

11 U.S.C. § 303(i)(1). Thus, to award fees under that section requires three elements: (1) the court dismissed the involuntary petition, (2) the dismissal was not on consent of the petitioning creditors, and (3) the putative debtor did not waive its right to attorneys' fees and costs. See, e.g., In re Lee, 252 B.R. 565, 565 (Bankr. M.D. Fla. 2000). There is no dispute that these three elements have been met in this case.

5

That does not mean, however, that fees must be awarded. The Petitioning Creditors appropriately note that it is within the Court's discretion whether to award fees or not, and if so, in what amount. See, e.g., Higgins v. Vortex Fishing Sys., Inc., 379 F.3d 701, 706 (9th Cir. 2004); Nat'l Med. Imaging, 570 B.R. at 161; In re Express Car & Truck Rental, Inc., 440 B.R. 422, 431 (Bankr. E.D. Pa. 2010). The Movant agrees that the award of fees is subject to the Court's discretion.

Courts apply a totality of the circumstances test in determining whether to award attorneys' fees and costs under section 303(i)(1). That test requires that courts consider, inter alia, (1) the merits of the involuntary petition, (2) any improper conduct on the part of the alleged debtor, (3) the reasonableness of the actions of the petitioning creditors, and (4) the motivation and objectives behind filing of the involuntary petition. See, e.g., In re Taub, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010) (citing 2 Collier on Bankruptcy ¶ 303.11 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.)).

The Movant argues, however, that there is a presumption that fees and costs should be awarded. See, e.g., In re Mountain Dairies, 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007).

The Court agrees that it has discretion to award fees under the totality of the circumstances test and that there is a presumption that some award of fees is appropriate. See, e.g.,

6

Higgins, 379 F.3d at 707; Express Car, 440 B.R. at 431 (noting that a majority of courts have held that there is a presumption in favor of awarding fees on dismissal of an involuntary petition).  As the Ninth Circuit noted in Higgins:

> Although we adopt the totality of the circumstances test as the appropriate standard under § 303(i)(1), we do not abandon the premise that any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed.  Thus, when an involuntary petition is dismissed on some ground other than consent of the parties and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized. . . . .  This presumption helps reinforce the idea that the filing of an involuntary petition should not be lightly undertaken, and will serve to discourage inappropriate and frivolous filings.  Filing an involuntary petition should be a measure of last resort because even if the petition is filed in good-faith, it can chill the alleged debtor's credit and sources of supply, and scare away his customers.

Higgins, 379 F.3d at 707 (quotations and citations omitted).

It is important to note, however, that any reduction of fees and costs under this standard is not a determination of whether those fees and costs are due to counsel from their client, the Movant, but only whether it is reasonable to enter an award against the Petitioning Creditors for them.

    C.    Totality of the Circumstances

        1.    Merits of the involuntary petition

The involuntary petition was filed by only two purported creditors, ACE and FTM.  The Petitioning Creditors argue that FTM

7

was a creditor because the Movant had made a deal with FTM to pay it only half of the rent owed by ACE. She then used that as an argument that she did not have to pay ACE the full rent.

However, at the dismissal hearing, the Court concluded that FTM was not a creditor of the Movant at all, notwithstanding its agreement to accept partial payment from the Movant in satisfaction of ACE's rental obligation. Further, the Court found that there was a dispute as to whether ACE was an unsecured creditor or whether it was secured by property the Movant owned in Georgia. It was on the basis of those findings that the Court dismissed the involuntary petition.[2] As a result, the Court cannot conclude that the involuntary petition was meritorious.

### 2. Improper conduct of putative debtor

The Petitioning Creditors argue that the actions of the Movant justify denial of any attorneys' fees. First, the Petitioning Creditors contend that at the dismissal hearing the Movant asserted that she had given funds to her counsel to cover the amounts due to ACE, but that those funds were never deposited by counsel but were returned to the Movant instead. This, they assert was a fraud on the Court. In addition, the Petitioning

---

[2] The Movant also presented evidence that she had more than twelve creditors, which the Petitioning Creditors disputed arguing it was not clear if they were her creditors or her company's creditors. The Court found it unnecessary to decide that issue, however, because of its ruling that neither of the Petitioning Creditors was eligible to file the involuntary petition.

8

Creditors assert that the Movant had a history of not paying her debts, including IRS trust fund taxes.

The Court disagrees with these. In granting the Motion to Dismiss, the Court did not make any findings or rely in any way on the representation of the Movant that she had deposited funds with her counsel to pay ACE. Nor did the Court conclude that the Movant was current on her obligations to creditors. Rather, as noted above, the Court dismissed the case simply because it found that the Petitioning Creditors were not eligible to file the involuntary petition. Therefore, the Court is not persuaded that these failures of the Movant, even if proven, warrant denial of attorneys' fees and costs under section 303(i)(1).

      3.    <u>Reasonableness of actions of petitioning creditors and objectives of filing of involuntary petition</u>

The Petitioning Creditors argue that the Court should deny the request for an award of attorneys' fees and costs because the Court did not find that the involuntary petition was filed in bad faith when it granted the motion to dismiss the case.

The Court agrees that it did not find that the involuntary petition was filed in good faith. That fact alone, however, is not dispositive in considering an award of fees and costs under section 303(i)(1). Instead, bad faith is required only for an award of compensatory or punitive damages under section 303(i)(2). <u>See, e.g.</u>, <u>In re Bayshore Wire Prods. Corp.</u>, 209 F.3d 100, 105 (2d Cir. 2000) (holding that bad faith of the

9

petitioning creditors "is not a prerequisite to an award of costs and attorney's fees under § 303(i)(1)."). However, bad faith is relevant to a consideration of the motives of the Petitioning Creditors in filing the involuntary petition and the actions they took in connection therewith.

The Petitioning Creditors assert that their actions in filing the involuntary petition were taken in the utmost good faith in an effort to collect legitimate debts owed to them by the Movant. The Movant argues, however, that the Petitioning Creditors' actions were improper. At the Dismissal hearing, the Movant testified that prior to filing the involuntary petition, she had tried to pay ACE the amounts she owed, but it refused to accept payment. She then tried to negotiate for a reduction in rent which was agreed to by FTM, ACE's landlord. She further testified that she tried to negotiate with Ackley for payment terms but he insisted on her agreeing to return one of the restaurants while still being liable to repay more than ACE was owed for both. When she refused, she said he physically threatened her. She said that she was trying to refinance the obligation with a third party when the Petitioning Creditors filed the involuntary petition. She argues their motive was to force her to agree to the unfair deal she had already rejected.

The Petitioning Creditors presented evidence refuting the Movant's testimony that ACE had refused to accept payments,

10

offering the affidavit of its bookkeeper who stated that the Movant stopped making payments on the loan in March and paid only half of the rent due. The bookkeeper stated that she never refused any payments from the Movant.

Because the Court found that the Petitioning Creditors were ineligible to file the involuntary petition, it did not need to rule on this conflicting testimony. However, even if the Petitioning Creditors did file the involuntary petition in an effort to collect the obligations owed them, the Court finds that the filing was not appropriate. They had no legal basis to file it, and it caused real harm to the Movant (requiring that she pay an attorney to have it dismissed and perhaps adversely affecting her pending efforts to refinance her obligations). Therefore, the Court concludes that the Petitioning Creditors' actions in filing the involuntary petition, when they were not eligible to do so, should result in an award of some attorneys' fees to the Movant.

D.   Reasonableness of fees

Fees requested by the Movant include fees and expenses of (i) local counsel, Douglas B. Chanco, totaling $2,812.50,[3] (ii)

---

[3] Originally, Chanco requested $2,100 for services detailed in the request, plus estimated fees of $550. (D.I. 18-5.) A supplemental declaration provided detail for $712.50 in lieu of the estimated time. (D.I. 25.)

transactional counsel, Leigh Goldman, totaling $1,230,[4] and (iii) pro hac vice counsel, Small Herrin, LLP, totaling $35,144.38[5] for a total of $39,186.88.

The Movant bears the burden of establishing that the fees requested under section 303(i)(1) are reasonable. See, e.g., In re Scrap Metal Buyers of Tampa, Inc., 233 B.R. 162, 166 (Bankr. M.D. Fla. 1999), aff'd 253 B.R. 103 (M.D. Fla. 2000). The Petitioning Creditors raise several specific objections to the fees.

        1.    Work performed before admission

The Petitioning Creditors contend that any work done before counsel was admitted to practice in the Virgin Islands must be disallowed. The Court agrees that this time should not be included in any award of fees against the Petitioning Creditors. See, e.g., Matter of Jindal for Pro Hac Vice Admission to Virgin Islands Bar, 69 V.I. 942, 948-49 (V.I. 2018) (holding that an attorney engages in the unauthorized practice of law when he/she commences work on a case before being admitted pro hac vice);

---

[4] Goldman provided detail for only $630 of those fees and expenses. (D.I. 18-6.) No supplemental declaration providing detail for the estimated fees of $600 was filed.

[5] Originally, Small Herrin requested $20,729.38 plus estimated fees of $6,345. (D.I. 18-4.) A supplemental declaration provided detail for $14,415 instead of the estimate. (D.I. 24.) She asserts that the actual services performed exceeded the estimate because she had not anticipated the extensive response filed by the Petitioning Creditors. (D.I. 24.)

Matter of Est. of Benjamin, No. ST-95-PB-53, 2019 WL 11788004, at *5 (V.I. Super. Ct. Feb. 8, 2019) (holding that a pro hac vice attorney cannot be compensated for legal services performed prior to being admitted).

In this case, attorney Small of Small Herrin was never admitted to practice in the Virgin Islands and did not seek admission pro hac vice.  (D.I. 18-4 & 24 at ¶ 10.)  Therefore, the fees for his services ($150) will not be included in any award against the Petitioning Creditors.  Id.

Attorney Humnicky of Small Herrin was admitted to practice pro hac vice on October 28, 2021.  In her Supplemental Declaration, Attorney Humnicky asserts that the filing of her application and documentation needed from the state courts was delayed by the pandemic.  However, until the retention application was filed, she was not authorized to practice law in the Virgin Islands and, therefore, the Court believes that fees incurred prior to that time should not be assessed against the Petitioning Creditors.  Attorney Humnicky charged $7,590 for services performed before filing her pro hac vice motion.  (D.I. 18-4.)  These fees may not be awarded against the Petitioning Creditors.

The Petitioning Creditors also argue that fees and costs for preparing the request for admission pro hac vice totaling $1,211.38 must also be disallowed.  The Court agrees.  The fees

and costs incurred in seeking admission did not relate to the defense of the involuntary petition.  Rather, the choice of counsel was Movant's and thus, the efforts of Movant's counsel to be admitted pro hac vice benefitted her and her client but were not caused by the Petitioning Creditors' actions.  See, e.g., In re N.S. Garrott & Sons, 54 B.R. 221, 223 (Bankr. E.D. Ark. 1985) (disallowing fees for preparing retention applications).  Because the fees incurred for those activities occurred before the pro hac vice motion was filed, they have already been reduced.  The costs associated with that motion ($296.38) will also not be included in any award against the Petitioning Creditors.

Thus, the Court will reduce the fee award against the Petitioning Creditor by $8,036.38.

### 2. Local hourly rate

The Petitioning Creditors assert that the rates awarded to Movant's counsel should not exceed the hourly rates available in the Virgin Islands.  See, e.g., Lakeview Loan Serv., LLC v. Martinez, No. CV 2016-0073, 2020 WL 4572340, at *6 (D.V.I. Aug. 7, 2020) (finding reasonable hourly rates for attorneys in the Virgin Islands to be $125-300); McLaughlin v. Indep. Ins. Advisors, Inc., No. ST-98-CV-338, 2012 WL 13220117, at *5 (V.I. Super. Ct. Sept. 7, 2012) (allowing paralegal compensation at $80 per hour).

The Court rejects this argument.  Under the Bankruptcy Code,

attorneys are not generally bound to accept local rates, but are entitled to their standard non-bankruptcy rates. See, e.g., Zolfo, Cooper & Co. v. Oster-Sunbeam Co., Inc., 50 F.3d 253, 260 (3d Cir. 1995) (concluding that a bankruptcy firm should not be restricted to the hourly rate typical in the locale of the case); In re Robertson Cos., 123 B.R. 616, 619 (Bankr. D.N.D. 1990) (holding that a rule restricting bankruptcy attorney's hourly rate to that prevailing in the locale where the case is pending "is unduly parochial particularly in this age of national and regional law firms working on larger more complex bankruptcy cases of more than local import."). This is particularly true in this instance because there are few bankruptcy practitioners in the Virgin Islands and, therefore, conflicts of interest may preclude a party from obtaining local counsel who are experienced in bankruptcy matters.

    3.    <u>Vagueness</u>

The Petitioning Creditors also contend that the fees should be reduced because many of the entries are vague, without sufficient detail to show what work was done and why that work was necessary. See, e.g., In re Mackie, 623 B.R. 285, 287 (Bankr. D.S.C. 2020); In re HL Builders, LLC, No. 19-32825, 2020 WL 6390103, at *7 (Bankr. S.D. Tex. Oct. 30, 2020).

In particular, the Petitioning Creditors object to the estimate of $7,495 for services that have not yet been performed

15

or for which bills have not been submitted.  Subsequent to the hearing, Movant's local and pro hac vice counsel submitted detailed bills for the estimated services.  (D.I. 24 & 25.  See also n. 3-5, supra.)  The Court finds the supplemental detail provided to be sufficient and, consequently, will not reduce the fees requested as being vague.  However, transactional counsel did not provide any detail for the estimated fees requested of $600, and, therefore, those fees must not be included in the award.

The Petitioning Creditors also find objectionable the request for fees where the entries have been redacted.  The Court agrees.  Because the entries are redacted, the Court is unable to ascertain whether the services rendered were necessary to defend the involuntary petition.  See, e.g., Glassman v. Heimbach, Spitko & Heckman (In re Spitko), Adv. No. 05-0258, 2007 WL 1720242, at *18 (Bankr. E.D. Pa. June 11, 2007).  Therefore, the Court will reduce the award of fees against the Petitioning Creditors by the $2,205[6] requested for those services.  (D.I. 24.)

With respect to the other entries, however, the Court will not make any reduction due to vagueness, because it finds that the entries are sufficiently detailed to allow an analysis of

---

[6] An additional $1,925 in fees for redacted entries is already included in the reduction for services rendered before the pro hac vice motion was filed.  (D.I. 24.)

16

what the services were and whether they were reasonable. Therefore, the Court will reduce the total award by $2,805 because of vagueness.

        4.     <u>Excessive amounts charged</u>

The Petitioning Creditors object to $3,920 in fees that they contend are excessive. Principally, they object to the time spent by Attorney Humnicky (11.2 hours) in preparing for the hearing on the motion to dismiss that lasted less than an hour.

The Court disagrees with this assertion. The issues relevant to the Motion to Dismiss were many and, although the Court rendered a ruling on the narrow issue of whether the Petitioning Creditors were eligible to file the petition, if the Movant had not been successful on that issue, she would have had to pursue her other arguments. Therefore, preparation for that contingency was appropriate and necessitated by the Petitioning Creditors' actions. Those fees will be included in the award against them. The Petitioning Creditors also contend that Attorney Humnicky spent an excessive amount of time spent seeking consensus on a proposed order dismissing the case after they had suggested that each side submit their own version, which is what ultimately happened. The Court disagrees. It is always preferable to the Court that counsel confer and submit an agreed order rather than submitting their own versions. Therefore, the Court will award fees to the Movant's counsel for trying to get

agreement on the order submitted.[7]

The Petitioning Creditors also object to $880 in fees charged for emails and calls between local counsel and pro hac vice counsel. See, e.g., Tyler v. Am. Airlines, Inc., No. CV 76-369, 1979 WL 498670, at *1 (D.V.I. June 21, 1979). The Court disagrees; intra-attorney calls and emails are compensable so long as they adequately describe the tasks performed, which the Court finds they do here. See, e.g., In re Prime Foods of St. Croix, Inc., 80 B.R. 758, 763 (D.V.I. 1987) (allowing compensation for intra-office conferences). Therefore, the Court will not reduce the fees requested for communications between counsel.

Finally, the Petitioning Creditors seek disallowance of fees for the time spent by Attorney Humnicky in preparing a motion for leave to file a reply to their response to the Motion, which was denied. See, e.g., In re Forever Green Athletic Fields, Inc., Bankr. No. 12-13888-MDC, 2017 WL 1753104, at * 12 (Bankr. E.D. Pa. May 3, 2017) (disallowing fees under section 303(i) for advancement of unsuccessful arguments). The Court agrees that the time spent should not be included in the award. Attorney Humnicky sought permission to file the Reply by midnight of the day before the hearing to consider the Motion. That was clearly

---

[7] The Court also notes that it accepted the form of order submitted by the Movants' counsel, rather than the one preferred by the Petitioning Creditors. (D.I. 16 & 17.)

too late and the Court denied the request.  Thus, the Court will disallow $875 for the 2.5 hours spent drafting the motion to file a reply.

        5.   <u>Administrative Tasks</u>

The Petitioning Creditors also object to fees of $700 charged by Attorney Humnicky for tasks they contend are purely ministerial tasks (scheduling calls and meetings, drafting exhibit cover pages, updating her calendar, coordinating staff, dealing with a power outage and filing pleadings).  <u>See, e.g.</u>, <u>In re Pierce</u>, 165 B.R. 252, 256 (Bankr. N.D. Ind. 1994).  Attorney Humnicky responds that it was quicker and easier for her to perform those tasks than to take the time to instruct a paralegal on what to do.  The Court disagrees.  That amount will not be included in the fee award against the Petitioning Creditors.

        6.   <u>Non-bankruptcy case Related Tasks</u>

The Petitioning Creditors finally argue that fees totaling $805 for the work done by Attorney Humnicky in helping the Movant deal with her efforts to obtain a loan or deal with credit reporting agencies should not be allowed.

The Court agrees with the Petitioning Creditors that fees for work unrelated to the involuntary petition should not be allowed in any award against them.  While those services may have benefitted the Movant (and therefore are due by her), they were not caused by the actions of the Petitioning Creditors and

therefore should not be charged as costs against them under section 303(i)(1).  Accordingly, the Court will disallow those fees.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, after the above reductions of $13,221.38, the Court will award fees against the Petitioning Creditors in the amount of $25,965.50.

An appropriate Order is attached.

Dated: April 7, 2021                    BY THE COURT:

                                        *[signature]*
                                        Mary F. Walrath
                                        United States Bankruptcy Judge